**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**LATELRA A. LEWIS**

     **Plaintiff,**

**vs.**                      **Case No. 1:17cv35-MW/CAS**

**NANCY A. BERRYHILL,
Acting Commissioner of Social Security,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB) and Title XVI application for Supplemental Security Income (SSI). After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On November 23, 2012, Plaintiff, Latelra A. Lewis, applied for DIB and SSI benefits with an alleged onset date of July 28, 2011, based on numbness in hands/feet and back, lower back pain, diabetes, and high blood pressure (hbp).   Tr. 28, 280, 285.[1,2]   Plaintiff's last date insured for DIB was March 31, 2013.   Tr. 28, 281.   Plaintiff's applications were denied initially on April 16, 2013, and upon reconsideration on July 23, 2013.   Tr. 28, 119-30, 157-58, 161-88.

On August 2, 2013, Plaintiff requested a hearing.   Tr. 28, 189-90. On March 16, 2015, Administrative Law Judge (ALJ) Ken B. Terry, conducted a video hearing in Jacksonville, Florida.   Tr. 28, 48-94.   Plaintiff testified from Gainesville, Florida.[3]   Tr. 56-89.   Donna P. Mancini, an impartial vocational expert, testified.   Tr. 28, 89-93, 229-31 (Resume).

---

[1]   Citations to the transcript/administrative record, ECF No. 9, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

[2]   Plaintiff previously filed applications for DIB and SSI alleging disability beginning June 2, 2009, and these applications were denied in an Administrative Law Judge's decision dated July 27, 2011.   Review of this decision was subsequently denied by the Appeals Council.   Tr. 33, 281.

[3]   Plaintiff appeared at the hearing without a representative and the ALJ advised her of her right to representation either by an attorney or a non-attorney.   Plaintiff decided to proceed without a representative.   Tr. 28, 50-52, 247 (waiver of right to representation).   Plaintiff's prior representative(s) withdrew from representation in

On July 23, 2015, the ALJ entered a decision concluding that Plaintiff is not disabled.   Tr. 28-41.   On August 7, 2015, Plaintiff filed a request for review of the ALJ's decision.   Tr. 23-24.   On February 9, 2016, Plaintiff was represented by counsel who requested and was granted additional time to file more evidence.   Tr. 13, 20-22.

On December 20, 2016, the Appeals Council denied Plaintiff's request for review.   Tr. 1-7.   The Appeals Council considered "the additional evidence" listed on the AC EXHIBITS LIST, including Exhibits B14E through B16E and B26F, Tr. 5-6, and also

> looked at evidence from Florida Health Alachua Health Department, dated March 10, 2016 through May 4, 2016 (8 pages); Meridian Behavioral Health, dated March 28, 2016 through July 26, 2016 (3 and 2 pages respectively), and Latelra Lewis, dated August 30, 2016 through November 4, 2016 (15 pages).   The Administrative Law Judge decided your case through July 23, 2015.   This new information is about a later time.   Therefore, it does not affect the decision about whether you were disabled beginning on or before July 23, 2015.
>
> We also considered the medical records from Meridian Behavioral Health (2 pages).   This evidence is not new because duplicates are contained in Exhibit B23F, pages 3 and 5.
>
> If you want us to consider whether you were disabled after July 23, 2015, you need to apply again.   The new information you submitted is available in your electronic file for you to use in your new claim.

---

February 2015.   Tr. 232-35.

Tr. 2. The ALJ's decision stands as the final decision of the

Commissioner. *See* 20 C.F.R. § 404.981.

On February 15, 2017, Plaintiff filed a Complaint requesting judicial

review of the Commissioner's final decision. ECF No. 1. Both parties

filed memoranda of law, ECF Nos. 15 and 18, which have been

considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this

appeal:

1. "The claimant meets the insured status requirements of the Social Security Act through March 31, 2013." Tr. 30.

2. "The claimant has not engaged in substantial gainful activity [SGA] since July 28, 2011, the alleged onset date." *Id.*

3. "The claimant has the following severe impairments: obesity, diabetes mellitus, diabetic retinopathy with macular edema, hypertension, and depression." *Id.*

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 30-31. The ALJ considered that Plaintiff "has had a loss of visual acuity," but that "recent testing performed in February 2015 revealed the remaining vision in both eyes was 20/30+2." Using criteria from the American Optometric Association, the ALJ concluded that "the claimant's visual efficiency percentage is 90 percent. Her visual acuity impairment value is 0.18. Accordingly, the claimant's vision does not meet the listings criteria for 2.02 or

2.04." Tr. 31. The ALJ also considered Plaintiff's obesity and "the effect this condition has on the claimant's overall ability to perform work related functions, either singly or in combination with other impairments," in accordance with Social Security Ruling 02-1p. *Id.* The ALJ further determined that Plaintiff had *mild* restriction in activities of daily living, *mild* difficulties in social functioning, *moderate* difficulties in concentration, persistence, or pace, and *no* episodes of decompensation, which have been of extended duration. Tr. 31-32.

5. "[T]he claimant has the residual functional capacity [RFC] to perform less than light work as defined in 20 CFR 404.1567(b) and 416.967(b).[4] Specifically, the claimant has the ability to lift/carry and push/pull 20 pounds occasionally, and 10 pounds frequently; sit for four hours at a time and a total of eight hours during an eight hour day; and stand and/or walk for two hours at a time for a total of six hours during an eight hour day. While she is precluded from climbing ropes, ladders and scaffolds, she can perform occasional climbing of stairs and ramps and occasional balancing, stooping, kneeling, crouching and crawling. She has no limitations regarding manipulation or communication. The claimant has environmental limitations precluding concentrated exposure to temperature extremes, vibration, and work hazards including unprotected heights and moving machinery. Mentally, the claimant is precluded from performing complex tasks but is capable of performing simple, routine tasks consistent with unskilled work, with concentration on those tasks for two- hour periods with normal breaks and a lunch." Tr. 31-32.

6. "The claimant is unable to perform any past relevant work as a residential aide. Tr. 39; *see* Tr. 91.

---

[4] The relevant DIB and SSI regulations are virtually identical. As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise. The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

7. The claimant was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; she has at least a high school education and is able to communicate in English. Tr. 40.

8. There are jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.* The ALJ determined that Plaintiff's ability to perform all or substantially all the requirements of a full range of light work has been impeded by additional limitations. As a result, the vocational expert was asked whether jobs exist in the national economy which Plaintiff can perform. The vocational expert testified that Plaintiff was capable of performing several representative jobs including cleaner, housekeeping; office helper; ticket taker; and ticket seller. All of these jobs have a light exertion level, an SVP of 2, and are unskilled.[5] Tr. 40-41, 91-93.

9. "The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2011, through the date of this decision." Tr. 41.

---

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

"In making an initial determination of disability, the examiner must

---

[6] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d

at 1211; <u>Torres v. Sec'y of Health & Human Servs.</u>, 845 F.2d 1136, 1137-

38 (1st Cir. 1988); <u>Cruz Rivera v. Sec'y of Health & Human Servs.</u>, 818

F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.   20 C.F.R.

§ 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[7]

---

[7]   An RFC is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.   The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").   The Court will apply the SSR in effect when the ALJ rendered her decision.   *See generally* <u>Bagliere v. Colvin</u>, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Pain is subjectively experienced by the claimant, but that does not

mean that only a mental health professional may express an opinion as to the effects of pain.   To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.   <u>Wilson</u>, 284 F.3d at 1225.   This is guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of the patient's experience of pain.   A clearly articulated credibility finding supported by substantial evidence will not be disturbed.   <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995).

To analyze a claimant's subjective complaints, the ALJ considers the entire record, including the medical records; third-party and the claimant's statements; the claimant's daily activities; the duration, frequency, intensity of pain or other subjective complaint; the dosage, effectiveness, and side effects of medication; precipitating or aggravating factors; and functional restrictions.   *See* 20 C.F.R §§ 404.1529 (explaining how symptoms and pain are evaluated); 404.1545(e) (regarding RFC, total limiting effects).

The Eleventh Circuit has stated that "credibility determinations are the

province of the ALJ." <u>Moore</u>, 405 F.3d at 1212 ("The ALJ may discount

subjective complaints of pain if inconsistencies are apparent in the

evidence as a whole.").

## IV. Legal Analysis

**Substantial evidence supports the ALJ's determination that Plaintiff had the RFC "to perform less than light work," and, as a result, is capable of performing other work.**

Plaintiff argues the ALJ should have found Plaintiff disabled at step 5

because it is entirely credible that as a direct and proximate result of her uncontrolled diabetes, although [Plaintiff] can be present each scheduled workday for eight 8 hours a day 5 days a week, she would require to[o] much additional break time because consistently high blood sugar readings, such as [Plaintiff's] the only readings between 250 and 350 would cause such significant fatigue over the course of the workday and workweek that [Plaintiff] would not be able to meet the productivity expectations of her employer. Additionally, [the ALJ] failed to properly assess [Plaintiff's] controlled diabetes and obesity in combination.

ECF No. 15 at 23. Plaintiff refers to a portion of Social Security Ruling

(SSR) 02-1p, 2002 SSR LEXIS 1 (Sept. 12, 2002). *Id.* at 23-25. Plaintiff

then completes her argument.

In this matter the RFC assessment by [ALJ Terry], when weighed against [Plaintiff's] impairments in combination, is not supported by the substantial evidence. Instead of focusing on the fact that the ophthalmologists involved in [Plaintiff's] care have preserved revision [sic]; the ALJ should have seen [the] significance

of [P]laintiff's diabetic retinopathy diagnosis and your con
commitment [sic] macular edema.   Viewed properly [P]laintiff's
diabetic mediated [sic] visual impairments demonstrate, along with
her high hemoglobin A1C readings, that [Plaintiff's] diabetes is
uncontrolled.   This in turn should lead to the conclusion that she is,
and feels, chronically ill.   Part and parcel of [Plaintiff's] being
chronically ill is her chronic low energy state.   In turn, that chronic
fatigue makes it implausible that she could.[8]

ECF No. 15 at 25-26.

Social Security Ruling 02-1p, 2002 SSR LEXIS 1 (Sept. 12, 2002),

guides the evaluation of obesity in disability claims, and was published

following the deletion of Listing 9.09, Obesity, from the Listing of

Impairments.[9]   2002 SSR LEXIS 1, at *1-2.   Social Security Ruling 02-1p

recognizes that obesity is a risk factor that increases the chance of

developing impairments in other body systems, including the

cardiovascular, respiratory, and musculoskeletal body systems.   *Id.* at *6.

Social Security Ruling 02-1p also provides guidance when evaluating

obesity in assessing an RFC.   *Id.* at *16-19.   It is noted, in part, that

---

[8]   This last sentence ended prematurely at "could."   *Id.* at 26.   Under her
"Statement of Facts" portion of her memorandum, Plaintiff provides six pages of
references to the record, but does not directly refer to this information in the argument
portion of her memorandum.   *See* ECF No. 15 at 7-12, 13-26.

[9]   At step two, the ALJ determined that Plaintiff had several severe impairments,
including obesity.   Tr. 30.   The ALJ also considered Plaintiff's obesity "on the
claimant's overall ability to perform work related functions, either singly or in
combination with other impairments" "in accordance with SSR 02-1p."   Tr. 31.

[o]besity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect the ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. . . .

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

*Id.* at *16-17.

The ALJ began the assessment of Plaintiff's RFC with a discussion of

Plaintiff's testimony. Tr. 33-34. Plaintiff testified that she last worked in

2008. Tr. 33. Plaintiff also

testified she is on insulin for her diabetes. She explained her blood sugar fluctuates with what she eats. At times, her blood sugar is over 200. She stated her blood sugar usually ranges between 250-300. She has diarrhea from Metformin. The claimant testified she wants to try to lose over 50 pounds so she can improve her diabetes. She attributes her weight gain to diabetes, stress, and overeating from depression.

The claimant also has a history of diabetic retinopathy. She underwent laser surgery, which improved the hemorrhaging in her eyes. However, the claimant testified her ophthalmologist advised her to work harder at controlling her diabetes. Her recent eye examination revealed that she is nearsighted. She was recently prescribed glasses by her doctor. The claimant denied difficulties seeing things up close. She stated she does not have a driver's license, as she has never driven. Her father or a friend drives her. She is able to take public transportation when it is available.

With regard to functional limitations, the claimant estimated that she is able to walk half of a football field prior to sitting. She will need to sit due to leg and back pain. The claimant is able to stand for 20-30 minutes. She testified she is able to lift 20 pounds. She is able to lift a gallon of milk and two light grocery bags in her left hand.

The claimant lives with her parents and her disabled son who has hydrocephalus. She is able to do household chores and clean her home. She is able to clean up behind her son. The claimant is able to make simple meals and wash dishes in the sink. Her father helps her lift the laundry basket to take it to the laundry mat. The claimant is able to grocery shop. She also attends church services which may last 1-3 hours. The claimant enjoys writing poetry. She is able to help her son with his homework and they read together. She testified he is an honor student.

Tr. 33-34. In addition, at the administrative hearing, the ALJ asked

Plaintiff, "So tell me what it is that keeps you from being able to work" and

Plaintiff did not testify that she was unable to work due to fatigue resulting from her diabetes.   Tr. 69-70.   Plaintiff responded that she was unable to work due to her depression and anxiety, Tr. 70-76, 87-80, issues not raised by Plaintiff in her memorandum.   *See infra* at n.10.   She also stated that these conditions were worse than her diabetes.   Tr. 70.   Plaintiff subsequently discussed her diabetes medication, but did not testify that she experienced low energy or fatigue.   Tr. 76-83.   Although she testified that she sometimes can walk about 50 yards and stand for 20-30 minutes, she explained these limitations were due to her leg and her back pain, respectively.   Tr. 84-86.

Prior to making findings as to Plaintiff's credibility, the ALJ considered medical records pertaining to her physical condition.   Tr. 34-37.   Plaintiff has required insulin for diabetes since 2009 and has a history of hypertension managed with medication.   Tr. 34, 370, 433.   In October 2010, Plaintiff was evaluated for diabetic retinopathy by Eric Grieser, M.D., and her best corrected visual acuity was 20/30 in her right eye and 20/25 in her left eye.   *Id.*   She was diagnosed "insulin-dependent diabetes mellitus with severe diabetic retinopathy, but no high risk features."   *Id.*   He recommended that she improve her glycemic control and to follow-up in

three to four months.   *Id.*

By May 2011, Plaintiff's "diabetes was poorly controlled with an A1C of 10.8."   Tr. 34, 358, 360.   She had not adhered to a diabetic diet and her blood sugar ranged from 200s to 300s.   At that time, Plaintiff stated that she walked about three miles twice per week.   Her physical examination was within normal limits.   Tr. 34, 360, 362.   Dr. Elochukwu indicated that they will not "continue to increase her diabetes medication because she is just non-compliant."   Tr. 362.   She was encouraged to follow a diabetic diet and exercise.   *Id.*

In August 2011, Plaintiff's A1C was 9.3 or 9.5, but "she admitted she had been noncompliant with her blood pressure medication."   Tr. 34, 359, 431.   By May 31, 2012, Plaintiff's A1C was 8.8.   Although she checked her blood sugars twice per day, she did not keep a log and could not remember the range of her blood sugars.   Tr. 34, 355.   She denied vision changes and her monofilament test indicated that she had no evidence of neuropathy; her hypertension was controlled on medication.   Tr. 34-35, 353-55.   By November 2012, Plaintiff's A1C increased to 10.9, up from 8.8.   She continued to deny vision changes.   She was started on an insulin regimen.   Her spinal range of motion was normal and she had good

range of motion of all joints. Her muscle tone was 4+, muscle strength was 5/5 throughout BUE and BLE, and her gait was normal. Tr. 35, 347-48, 390, 421, 425.

On December 17, 2012, Plaintiff the returned to Dr. Grieser for an ocular diabetic examination. Tr. 421. On examination, there was evidence of macular edema, or swelling of the eye's macula. Her best corrected vision was 20/30 in each eye. Dr. Grieser diagnosed proliferative diabetic retinopathy and diabetic macular edema and stressed the importance of glucose control. Tr. 35, 419-22, 471. Primary care records from February 21, 2013, indicate Plaintiff was noncompliant with Janumet, had gone three days without her hypertension medication, and her A1C was 10.1. Tr. 35, 342-43, 395, 424.

On February 8, 2013, Plaintiff underwent an intravitreal injection in both eyes and reported subjective improvement in her vision with the injections by March 2013, but reported that her vision was still blurry. Tr. 35, 467, 469-72. By April 30, 2013, Julia Shulman, M.D., noted that Plaintiff's uncorrected visual acuity was 20/50 in the right eye and 20/40 in the left eye, but that she continued to have suboptimal glucose levels. Tr. 35, 491-92.

On July 10, 2013, Plaintiff reported to Dr. Shulman that her vision was fine and she underwent a second focal laser treatment on her right eye. Tr. 35, 508. At a follow-up-up examination with primary care on July 26, 2013, Plaintiff admitted she was not taking Metformin as prescribed, she eats more than scheduled, misses insulin doses, had not worked on losing weight, and her A1C was 12.5. Tr. 35, 530-31. There were no abnormalities noted on Plaintiff's neurological examination and Plaintiff's prescription for Lantus was increased. *Id.*

Dr. Shulman's records from September 10, 2013, indicate that Plaintiff reported her vision improved from her previous focal laser treatment and her best corrected visual acuity as measured by manifest refraction was 20/70 in her right eye and 20/25 in her left eye. Tr. 35, 607-10. Plaintiff had worsening glycemic control with persistent thickening on the macula temporally and Dr. Shulman performed a second focal laser procedure on Plaintiff's right eye. *Id.* Plaintiff returned after this procedure in November 2013 and her uncorrected visual acuity in her right eye improved to 20/50-2. *Id.* Plaintiff's visual fields remain full and her intraocular pressure was normal. *Id.*

Plaintiff followed up with her primary care physician, Dr. Poudel-

Chataut on November 13, 2013.   He characterized Plaintiff's diabetes as

very poorly controlled with an A1C of 12 and reported home sugar levels in

the 250s.   Tr. 35, 562-64.   Plaintiff was encouraged to attend diabetic

education.   Tr. 564.

In January 2014, Plaintiff continued to be noncompliant with her

diabetes regimen and her A1C was 10.8.   Tr. 36, 594.   On neurological

examination, there were no gross focal deficits and Plaintiff's gait remained

intact.   Tr. 36, 595.   As of July 17, 2014, Plaintiff reported that her vision

had been stable although there was continued endocrine in her right eye.

Her uncorrected vision was stable at 20/70-2 in her right eye and 20/30-2 in

her left eye.   Tr. 36, 599-600.   During a follow-up-up visit with primary

care on August 21, 2014, Plaintiff stated she discontinued Metformin due to

concerns of possible renal injury although it is noted that she did not have a

history of abnormal renal function.   She denied vision changes, myalgias,

tingling, and focal weakness.   Tr. 36, 552-53.

On February 9, 2015, Plaintiff presented to Alachua County Health

Department in her A1C was 10.0 and she reported not taking her

Metformin.   Her BMI was 39.   Tr. 36, 675-79.   She had full range of

motion in all extremities, her muscle strength was 5/5 throughout, and there

was no gross motor dysfunction.   *Id.*   On February 27, 2015, Plaintiff was

evaluated by University Opticians and her uncorrected vision was 20/50-2

in her right eye and 20/40-2 in her left eye and tonometry testing revealed

normal intraocular pressure.   Tr. 36, 688-89.   She was diagnosed with

compound myopic astigmatism and background diabetic retinopathy, but

despite this, her corrected vision was 20/30+2 in her right and left eyes.

*Id.*

       At this point, the ALJ considered the opinion evidence of Disability

Determination Services physician, Donald Morford, M.D.   Tr. 36, 138-43

(July 23, 2015).   The ALJ found Dr. Morford's "opinion is consistent with

the overall medical evidence, which shows despite the claimant's ongoing

noncompliance with treatment, her physical examination remains largely

within normal limits" and further noted: "Dr. Morford's opinion for light

exertion work is also consistent with the claimant's ongoing activities of

daily living and her testimony that she is able to lift 20 pounds."   Tr. 36,

139-41.   The ALJ gave "significant weight to Dr. Morford's opinion and

adopt[ed] a [RFC] or a reduced range of light exertion work.   To better

accommodate the claimant's obesity, the undersigned has further

decreased the [RFC] to include occasional postural activities and

environmental restrictions." Tr. 36-37. The ALJ did not include visual

limitations in the RFC other than the need to avoid concentrated exposure

to work hazards in light of Plaintiff's best corrected vision of 20-30 and her

testimony that "while she has some difficulty seeing things at a distance,

she is able to see things up close without problems. Nevertheless, the

undersigned notes that the vocational expert testified someone with 20/30

vision could perform representative occupations in the national economy."

Tr. 37, 79, 90-91.

After discussing the medical evidence pertaining to Plaintiff's physical

impairments, and before discussing the medical record regarding Plaintiff's

mental impairments, including depression/anxiety,[10] the ALJ returned to a

discussion of Plaintiff's credibility in light of the medical record.

> The undersigned finds that the claimant's testimony regarding her
> physical inability to work is not entirely credible in light of the medical
> evidence of record. The claimant's diabetes and hypertension
> should be amenable to proper control by adherence to
> recommended medical management and medication compliance.
> However, primary care records continually document the claimant's
> ongoing noncompliance with blood pressure medication, insulin,
> Metformin, weight loss, and diabetic diet. The claimant's failure to
> follow treatment recommendations suggests her symptoms are not
> as bothersome or as limiting as alleged. Despite this
> noncompliance, there is no evidence the claimant suffered any end

---

[10] Plaintiff does not argue that the ALJ erred when reviewing the medical evidence related to Plaintiff's mental impairments. ECF No. 15 at 13-27.

organ damage, nor has she required hospitalization for her diabetes. Moreover, the claimant had no significant problems with her kidneys, hands, or feet. The claimant's sensation is intact to monofilament testing and there are no deficits noted in her gait. Additionally, progress notes do not document ongoing complaints of back pain or numbness and tingling as the claimant alleged. Although there is evidence of prolifterative [sic] diabetic retinopathy with macular edema, the claimant has had successful laser surgery and injective therapy in her eyes. Her current best corrected vision is 20/30 in each eye and there is no indication her vision interferes with her performance of normal activities of daily living. On her function report the claimant testified she watches The Price is Right and soap operas on television throughout the day. In addition, she did not note any visual problems completing the forms. (Exhibit B6-E). Although her ophthalmologists have advised the claimant improve her blood sugar control to prevent further deterioration of her vision, she has failed to do so. Despite this, the claimant's ophthalmologists have not placed limitations on her activities due to her vision.

In addition to the limited objective medical evidence, the claimant's credibility regarding her inability to work is also diminished in light of statements to her mental health treatment providers that she is employed as a full time mother. This suggests she has not returned to the workforce for reasons unrelated to her impairments. The claimant reported to mental health that she last worked in 2008, then she had her son in 2010. She described her current employment as full time mother. (Exhibit B4-F). In August of 2013, the claimant also expressed a desire to return to college. (Exhibit B12-F). The claimant engages in numerous activities that are inconsistent with the total inability to work. She is the primary care-giver for a five year old disabled son who receives supplemental security income for hydrocephalus. The claimant testified she cleans the shower and cleans her toilet with bleach. She also cooks, washes dishes, and does laundry. The claimant shops for groceries and attends church.

Tr. 37.[11]

The ALJ accounted for Plaintiff's credible limitations caused by her diabetes and obesity in the RFC assessment. *See* Solomon v. Comm'r of Soc. Sec., 532 F. App'x 837, 840-41 (11th Cir. 2013 (unpublished).

Plaintiff does not challenge the ALJ's evaluation of the medical evidence. As noted at the outset of the legal analysis, Plaintiff posits that "it is entirely credible that as a direct and proximate result of her uncontrolled diabetes, although [Plaintiff] can be present each schedule workday for eight 8 hours a day 5 days a week, she would require to [sic] much additional break time" essentially do to "significant fatigue" that she would suffer during the workday and workweek that she "would not be able to meet the productivity expectations of her employer." ECF No. 15 at 23.

Plaintiff does not contend the ALJ overlooked relevant medical evidence in the record or mischaracterized treating physicians' analysis of

---

[11] In evaluating Plaintiff's credibility, the ALJ may consider a claimant's daily activities when assessing the credibility of her complaints. Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i) (providing that daily activities are relevant and can be considered by the ALJ when evaluating a claimant's symptoms); *but see* Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability). A claimant's ability to do some work, even at a low level, "may indicate that she is able to do more work." Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808 (11th Cir. 2013) (unpublished).

Plaintiff's medical problems.   The ALJ noted that treating physicians,

Dr. Elochukwu and Dr. Poudel-Chataut, characterized Plaintiff's diabetes

as "poorly controlled" or "very poorly controlled," Tr. 34-35, respectively.[12]

No treating physician, however, opined that, as a result of her diabetes or

obesity, singly or in combination, Plaintiff was disabled, unable to complete

a normal workweek, or unable to maintain productivity standards.

Plaintiff does contend the ALJ did not properly assess her diabetes

and obesity in combination.   ECF No. 15 at 23.   The ALJ specifically

stated that "[t]he claimant does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 30-31.

This finding, albeit boilerplate language, demonstrates that the ALJ

considered the combined effect of Plaintiff's impairments.   *See generally*

Wilson, 284 F.3d at 1224-25.

In addition, the ALJ found that Plaintiff routinely did not comply with

her treatment regimen for diabetes and Plaintiff does not challenge this

finding.   In fact, a claimant's noncompliance with prescribed treatment may

---

[12]   Dr. Pourafshar noted Plaintiff's diabetes was "poorly controlled."   Tr. 343, 348, 385, 390, 554, 560, 572, 578, 632.

be used as a factor for discounting allegations of disability.  Ellison v.

Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

Plaintiff requests this Court to re-weigh the evidence and substitute

its discretion for that of the ALJ.  Bloodsworth, 703 F.2d at 1239.  As

stated above, the role of a reviewing court under 42 U.S.C. § 405(g) is

limited to determining whether there is substantial evidence in the record as

a whole to support the decision.  As long as the ALJ's decision is

supported by substantial evidence and based upon correct application of

the law, as it is in this case, it is entitled to deference and should be upheld.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based

upon substantial evidence in the record and the ALJ correctly followed the

law.  Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully

recommended that the decision of the Commissioner to deny Plaintiff's

applications for Social Security benefits be **AFFIRMED.**

      **IN CHAMBERS** at Tallahassee, Florida, on October 10, 2017.

                    **s/   Charles A. Stampelos**      
                    **CHARLES A. STAMPELOS**
                    **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**